IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION NO. |
| v. ) | 2:19-cr-343-RAH |
| ) | |
| TERRY TYSHON BAKER ) | |

**MEMORANDUM OPINION and ORDER**

Defendant Terry Tyshon Baker ("Baker") was charged on September 11, 2019, in an indictment with three counts of possession with intent to distribute a controlled substance in violation of 18 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a crime in violation of 18 U.S.C. § 924(c)(1)(A). On October 16, 2019, he filed a motion to suppress all "[e]vidence seized as a result of the illegal traffic stop . . . as tainted 'fruits of the poisonous tree.'" (Doc. 16, p. 6.) Claiming the officers did not have reasonable suspicion to stop, or probable cause to search, the vehicle, Baker contends that all evidence seized and statements made should be suppressed because the search violated the Fourth Amendment to the United States Constitution.

After an evidentiary hearing, the Magistrate Judge recommended the Court deny the Motion to Suppress Evidence. (Doc. 38.) On March 30, 2020, Baker filed Objections to the Report and Recommendation of the Magistrate Judge. (Doc. 41.) Upon an independent and *de novo* review of the record, including a review of the

transcript, as well as video footage and other evidentiary materials presented during the hearing before the Magistrate Judge, and for the reasons that follow, the Court concludes that the Objections are due to be OVERRULED and the Motion to Suppress is due to be DENIED.

## I. STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions of the Recommendation *de novo*. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommendation; receive further evidence; or resubmit the matter to the magistrate judge with instructions." FED.R.CRIM.P. 59(b)(3).

*De novo* review requires the district court to independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). "Although *de novo* review does not require a new hearing of witness testimony, *United States v. Raddatz,* 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980), it does require independent consideration of factual issues based on the record." *Id.* If the Magistrate Judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceeding. *Id.* The Court has reviewed the transcript of the suppression hearing in its entirety and the available video footage.

## II. DISCUSSION

The Magistrate Judge provided a thorough recitation of the facts in her Recommendation. Consequently, a summary of the facts related to the Motion to Suppress is not necessary, as the Court adopts the Magistrate Judge's findings of fact, with several minor exceptions noted in the foregoing analysis, as set forth in the Recommendation.

### A. The High Crime Location

Baker objects to the Magistrate Judge's finding that officers from the Troy Police Department routinely conduct foot patrols at the Trojan Tavern ("the Tavern") and its adjacent parking lot because the business is a high crime location. He argues that the Court should give little weight to any "high-crime factors because this factor is non-specific and no connection exists between any criminal activity in the Trojan Tavern and Mr. Baker's behavior." (Doc. 41, p. 7.)

The evidence presented at the suppression hearing, however, establishes that a substantial amount of crime occurred around the Tavern, especially during the evening. The Troy Police Department received fifty calls about activity at the Tavern between November 17, 2017 and May 11, 2018, including reports of fights, shootings, disorderly subjects, and loitering in the parking lot. (Doc. 37, R. 8-9, 14;

Gov's Ex. 6.) Clearly, the Tavern was a "problem spot for the police department." (Doc. 37, R. 9.) Officer Raiti testified that Tavern management expressed concerns about people "hanging out" in the parking lot. (*Id*., R. 88.) In addition, the Police Chief advised the officers of a need for a heavy presence at the Tavern. (*Id*., R. 49, 88, 99.)

Moreover, it was especially reasonable for the officers to be concerned about the location of the parked car after the "very hectic scene" on April 14, 2018, one month before Baker's arrest. (*Id*., R. 10.) On April 14, 2018, a shooting occurred in which 55 rounds were fired into and around the Tavern. (*Id*., R. 9-10, 15, 48.) The officers testified that, during the April 2018 shooting, there were "subjects in this parking lot" waiting in their cars "on guys to come out of the tavern" and "when they came out, that's when they all took their shot . . . kind of an ambush type deal." (*Id*., R. 76, 115.)

Testimony and the video footage of the officers' body cameras show that, around midnight on May 11, 2018, the car in which Baker was sitting was parked in the first available space around the corner from the building in which the Tavern is located. (Def's Ex. B.) The car was present at the time the officers initially approached the parking lot and the Tavern, and the car appeared to have remained there upon the officers' return 6 to 8 minutes later. (*Id*. ; Doc. 37, R. 141.) Under

these circumstances coupled with the prior crime in the area, it was reasonable for the officers to patrol the public parking lot and approach the vehicle.  Thus, Baker's objection to the Magistrate Judge's finding regarding the nature of the location is due to be overruled.

### B. The Third Man

Baker objects to the Magistrate Judge's finding that "Officer Eagan observed a third man walk to the vehicle, lean in to speak to the occupants of the vehicle, and then walk away from the vehicle."  (Doc. 38, p. 3; Doc. 41, p. 7.)  He argues that the recorded video evidence of the officers' patrol of the area does not show a third man and therefore Officer Eagan's testimony was not credible.

In the Recommendation, the sole reference to another man in the parking lot is in the Magistrate Judge's findings of fact.  In her analysis, however, the Magistrate Judge does not rely on this fact when recommending the motion to suppress be denied.  More importantly, with the exception the officer's recollection of a third man, the majority of Officer Eagen's other testimony is substantially corroborated by the video footage.  Because the video recording does not provide a complete view of the parking lot, the Court cannot discern whether Officer Eagen's recollection of the third man is mistaken or whether there was, in fact, another man in the lot.

Nonetheless, out of an abundance of caution, the Court will not consider the third man in its determination.  Furthermore, with respect to the facts relevant to the particular issues raised in the motion to suppress, the Court finds no basis for discrediting Officer Eagan's testimony.  Consequently, Baker's objection on this basis is due to be overruled.

### C.  The Car Door and the Odor of Marijuana

Baker objects to the Magistrate Judge's finding that Baker "opened the car door slightly so that he could speak with Officer Eagen." (Doc. 38, p. 4.)  He also objects to her finding that Officer Eagen smelled marijuana before he pulled open the passenger-side door completely.  (Doc. 41, p. 14; Doc. 38, p. 14.)

First, Baker maintains that he had no desire to speak with Officer Eagan.  There is no testimony that provides Baker's specific reasons for deciding to open the car door.  Consequently, the Court will not assume that the specific reason Baker initially opened the door was based on his desire to speak to the officer.[1]

The more important finding at issue is whether Officer Eagen or Baker initially opened the car door.  With respect to his objections concerning the initial opening of the car door and the immediate odor of marijuana, Baker raises

---

[1] However, as discussed in Section D of this Memorandum Opinion, the Court does find that the initial encounter between Baker and Officer Eagen was consensual.

6

essentially the same arguments and issues as those raised in the motion to suppress. The Court has reviewed all the evidence, including the transcript of the officers' testimony and the audiovisual recording of Officer Eagen's body camera, while paying close attention to the opening of the passenger car door. The Court finds that Baker initially opened the car door. Furthermore, the Court finds credible Officer Eagen's testimony that he smelled the odor of marijuana as soon as Baker opened the door. Therefore, the Recommendation's findings of fact related to Baker's initial opening of the car door and Officer Eagen's smelling the odor of marijuana at the time the door was opened are due to be adopted.

### D. The Fourth Amendment

Baker objects to the Magistrate Judge's legal conclusion that he was not the subject of a Fourth Amendment seizure prior to the opening of the passenger door. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure under the Fourth Amendment occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) (quotation marks omitted). But "not every encounter between a police officer and a citizen" constitutes

a seizure under the Fourth Amendment. *Id*. (citation omitted).

Police-citizen encounters may be categorized into three types: (1) consensual encounters; (2) brief seizures or investigatory detentions; and (3) full-scale arrests. *United States v. Aponte*, 662 Fed. Appx. 780, 784 (11th Cir. 2016) (citing *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011)). When the encounter is consensual, officers may ask questions of individuals, ask to examine an individual's identification, and request consent to search without implicating the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (stating that these actions are permissible "as long as the police do not convey a message that compliance with their requests is required").

Regarding the first category of police-citizen encounters, the test for distinguishing a consensual encounter from a seizure or an arrest is whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202 (2002) (internal quotation marks omitted). This test "is objective and presupposes an *innocent* person." *Id.* (internal quotation marks omitted; emphasis in original).

If a reasonable person would feel free to terminate the encounter, no seizure has occurred, and the Fourth Amendment is not implicated. *Aponte*, *supra* (citing *Florida v. Bostick*, 501 U.S. at 437). If a reasonable person would not feel free to

8

terminate the encounter, he has been "seized," and the Fourth Amendment is implicated. *Franklin*, 323 F.3d at 1301. To determine whether an encounter is consensual or coercive, courts must consider "all the circumstances surrounding the encounter." *Drayton* 536 U.S. at 201 (quotation marks omitted). Facts relevant to determining whether a reasonable person would feel free to decline the officers' requests or terminate the encounter include whether the officers made any intimidating movements, displayed an overwhelming show of force, brandished any weapons, made any threats or commands or blocked the individual's path of exit. *See Drayton*, 536 U.S. at 204. *See also Jordan*, 635 F.3d at 1186 (quoting *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (discussing similar factors, including the display of weapons and the language and tone of voice of the police)). These factors are not exhaustive and are not meant to be applied rigidly. *Jordan*, 635 F.3d at 1186. They are "simply guidance for the holistic inquiry into whether a reasonable person would feel free to decline the officers' requests or terminate the encounter." *Aponte*, 662 Fed. Appx. at 784 (citing *Jordan*, *supra*).

The Fourth Amendment prohibits "unreasonable searches and seizures," U.S. CONST. amend. IV. Therefore, to trigger Fourth Amendment scrutiny, a "search" or "seizure" must have occurred. Otherwise, the encounter is "consensual" and does not implicate the Fourth Amendment. *See id.* at 1185–86.

Baker argues that the encounter with the officers was coercive in nature and therefore, if the Court were to find that he initially opened the door, the facts demonstrate he did so in submission to the officers' authority. Specifically, he contends that there are several factors establishing a Fourth Amendment coercive seizure, including the following: (1) Officer Rieti physically obstructed the means of exiting the parking space by standing behind the car; (2) Officer Eagen knocked on the car window; (3) the officers "signified their authority" by exiting their patrol cars, wearing police uniforms with holstered weapons, including pepper spray, batons, tasers, and guns, and pointing their metal flashlights into the vehicle and the occupants' faces; and (4) he (Baker) is an African-American man. (Doc. 41, pp. 15-28.)

The Court agrees that the encounter was non-coercive and therefore the Fourth Amendment was not implicated prior to the time Baker opened the car door. As discussed in the Magistrate Judge's Recommendation, the facts in this case are distinguishable from those set forth in *United States v. Mestre*, 362 F. Supp. 3d 1175 (M.D. Ala. 2019), wherein the court found that an officer illegally seized two men when he opened the door of their vehicle without reasonable suspicion to do so.

Furthermore, although the officers wore uniforms with holstered weapons and held flashlights, they did not brandish their weapons or make any commands or

threats.  After walking out of the Tavern and down the sidewalk, the officers approached the car on foot and Officer Eagen lightly tapped on the passenger window.  Although Baker alleges that he and the driver could not leave because the officers blocked the exit, the video footage indicates that there was some space between the car and the building.  The Court also recognizes the possibility that, if the occupants had gestured to the officers to move or turned on the vehicle's lights, the officers could have stepped out of the way.  This is not a case where the occupants of a vehicle were blocked by a patrol car.  *See*, *e.g.*, *United States v. Flores-Uriostequi*, No. 1:09-cr-438-JEC-LTW, 2012 WL 1884036 (N.D. Ga. May 22, 2012) (unpublished) (noting that, if the officers had approached the vehicle on foot, the circumstances would have been consensual).  Moreover, given the prior shootings in the area, the Court credits Officer Eagen's testimony that he planned to ask Baker and the driver what they were doing and advise them to go to the club or move the car. (Doc. 37, R. 147.)

The Court likewise agrees that the reasoning in *United States v. Baker*, 290 F.3d 1276 (11th Cir. 2002), in which the Court discussed the differences between a consensual encounter and a seizure, is applicable.  In *Baker*, the Court concluded that the Fourth Amendment was not implicated when an undercover officer displayed his badge to the occupants of a vehicle idling in traffic and asked the driver

to roll down his window. *Id*. The Court determined "[t]he mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure." *Baker*, 290 F.3d at 1278 (citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion)). "The societal pressure to stop and speak with law enforcement is not a sufficient restraint of liberty to raise the interaction to a level that requires constitutional protection." *Baker,* 290 F.3d at 1278.

With respect to Baker's argument that Baker's race should be considered as a factor when determining whether the encounter was consensual, Baker cites to no binding precedent in this Circuit. Even if the Court were to consider *arguendo* the factor that the officers were Caucasian and the vehicle's occupants were African-American, it is clear that this factor as applied to the facts of this case does not establish a sufficient restraint of liberty to raise the interaction to a level triggering the Fourth Amendment, *see Baker*, *supra*, especially when considering the other circumstances indicating a consensual encounter, such as the officers' tone of voice, the light tapping on the car window, and the absence of any threats or orders.

Based on the foregoing, the Court concludes that Baker's objection to the Magistrate Judge's legal conclusion that he was not the subject of a Fourth Amendment seizure prior to the opening of the passenger door is due to be overruled.

## III. CONCLUSION

For the reasons as stated, the Court concludes that Baker's Fourth Amendment rights were not violated, and the Motion to Suppress Evidence is due to be denied. Accordingly, it is

ORDERED as follows:

1. The Defendant's Objections (Doc. 41) are OVERRULED;

2. The Recommendation of the Magistrate Judge (Doc. 38) to deny the Motion to Suppress is ADOPTED; and

3. The Defendant's Motion to Suppress (Doc. 16) is DENIED.

DONE, this 28th day of April, 2020.

                                   /s/ R. Austin Huffaker, Jr.
                                 R. AUSTIN HUFFAKER, JR.
                                 UNITED STATES DISTRICT JUDGE